(152 App. Div. 559.)

TELLOCK v. INTERNATIONAL PAPER CO.

(Supreme Court, Appellate Division, Third Department. September 11, 1912.)

MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to a minor servant by his hands becoming caught in the felt of a paper-making machine while assisting another servant to straighten the felt after it had been washed, defendant's negligence in failing to furnish plaintiff a safe place to work, and in failing to instruct him as to the proper manner of doing the work, held for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

Appeal from Trial Term, Saratoga County.

Action by Leroy Tellock, an infant, by Susan Tellock, his guardian ad litem, against the International Paper Company. From a judgment of nonsuit, plaintiff appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

John Scanlon, of Cohoes, for appellant.
Rockwood & McKelvey, of Saratoga Springs, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

LYON, J.  This action was brought, under the provisions of the Labor Law relating to the liability of employers, to recover damages on account of personal injuries sustained by the plaintiff while in the employ of the defendant in its paper mill at Palmers Falls, N. Y., in April, 1911.  At the time of the trial in October, 1911, the plaintiff was 20 years of age.  He had been in the employ of the defendant at different times since 1905 or 1906, and had on the last occasion re-entered defendant's employ in June, 1910, as an oiler of machinery, working about the machine upon which he was injured until about 10 days before the accident, when he was put at work on this machine as fourth hand.  In the latter employment it became his duty to pull shavings, shift reels, tear the ends of paper, and perform such other services about the machine as might be necessary.

On the forenoon of the day when he was injured he was directed by Butler, who was the foreman and in charge of this and other machines, to go upon this machine and rope up the felt.  This consisted of pushing the sides of the endless sheet of felt, which ran lengthwise through the machine, towards the center of the machine, until it had been reduced from the width of about 12 feet to that of 3 or 4 feet, when it was washed by throwing streams of water against it.  After being washed, most of the water was pressed out of it as it passed between the rollers, leaving it a wet, somewhat tight, wadded mass of felting along the center of the machine.  In order to render the felt sheet again available as a carrier of paper, it was necessary that it be straightened out to its full width, which was done by drawing the edges of the felt sheet to the sides of the machine.  To do this two men, lying face downward upon a board which extended across the machine, each with his head towards the other, pulled upon the felt with his hands, thus smoothing out the folds and wrinkles in the felt sheet, which during the operation ran about 12 or 14 inches underneath them at a speed of about 485 feet per minute.  This board, which was about 14 feet long, 14 inches wide, and 2 inches thick, was used by the employés about the machine as a footboard, or bridge, over which to pass from one side of the machine to the other, thus saving the men the necessity of passing around the ends of the machine, which was of considerable length.  The ends of the footboard rested upon the sides of the machine, and it was not bolted or otherwise fastened to the machine; but in each end of the board were grooves, or sockets, up into which fitted two iron projections of the sides of the machine, about one inch square, which held the board from moving endwise, but did not prevent it being lifted from the machine, which was at times necessary in operating the machine.

After the plaintiff had finished the work of assisting in roping up the felt, and the sheet had been washed, Foreman Butler directed the plaintiff to go upon the machine and assist in smoothing out the felt.  This the plaintiff had never before done, but had seen men doing it that way.  Foreman Butler gave him no instructions as to how to do the work, and did not inform him of the tendency of the folds to tighten as the felt sheet was straightened out, nor caution him as to the danger of getting his hand caught in the folds.  The

plaintiff testifies that, while he knew the work was attended with danger and that his hand might get caught, he did not know that, if his hands got caught, he might be pulled into the machine, and that, if he had been told so, he would probably have been a great deal more careful; that he was as careful as he knew how to be, from what he knew about it; that he had never been on this footboard but once before, and then to keep the pulp from coming off, and did not know whether the board was fastened down.    Pursuant to the instructions of Foreman Butler, the plaintiff went upon the machine with one Hawkins, and each, lying face downward upon the board, with his head towards the center of the machine, proceeded to smooth out the folds of the felt sheet by pulling the sheet towards the sides of the machine with his hands—the plaintiff using both hands, crossed underneath the board.    While so engaged, the plaintiff's left hand was suddenly caught in a fold of the felt, whereupon, to save himself from being drawn into the machine, the plaintiff clasped the board with the elbow of his right arm; but, the board tipping on edge, the plaintiff fell upon the felt sheet, and was carried through a portion of the machine, and precipitated into the pit beneath the machine, resulting in his right arm being broken below the elbow, necessitating amputation, and in other very serious injuries.

One witness testified that he had worked on this machine for about 10 years and had never known of such an accident happening.    Another witness testified that he had been engaged in work in about a dozen different paper mills in various parts of the country during the preceding 12 or 13 years, and that in two of them the footboard was bolted to the frame so it could not tip, and in a third the board was fastened to a framework, and could not tip without the framework tipping also, and that in the other mills the footboards were not bolted down.

In May, 1911, the plaintiff caused to be served upon the defendant the notice required by statute, and later this action was brought. Upon the trial, the plaintiff was nonsuited, and has brought this appeal from the judgment entered thereon.

In view of these facts, we think it was for the determination of the jury whether the defendant was not negligent in failing to furnish the plaintiff a safe place to work, and in not instructing him as to the proper manner of doing the work, and warning him as to the danger of getting his hand caught in the folds of the felt.    Upon the motion for the nonsuit a question of law only was involved, and that was whether, admitting all the facts presented, and giving to the plaintiff the advantage of every inference that could properly be drawn therefrom, an issue of fact was presented for the determination of the jury.    Kraus v. Birnbaum, 200 N. Y. 130, 93 N. E. 474.

It can hardly be said as matter of law that injury might not reasonably have been anticipated to an inexperienced boy, uninstructed as to the manner of doing his work, and unwarned of the danger of getting his hand caught in the folds of the felt, which increased as the felt became straightened, in requiring him to work lying face

downward on an unfastened board, liable to be tipped by the hand of the plaintiff, or his fellow workman being caught in a fold of the felt, with no opportunity to the plaintiff to save himself from being thrown upon the swiftly moving sheet of felt, and carried between the unguarded rollers of a dangerous machine.

The judgment appealed from must be reversed, with costs to the appellant to abide the event. All concur: HOUGHTON, J., in result only, on the ground the failure to fasten the board was the only question of negligence involved.